T.C. Memo. 2019-6

UNITED STATES TAX COURT

ROBERT C. GUNTHER AND JAYNE C. GUNTHER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2834-16.                          Filed February 5, 2019.

David D. Aughtry and Patrick J. McCann, Jr., for petitioners.

William C. Bogardus and Debra Lynn Reale, for respondent.

MEMORANDUM OPINION

GOEKE, Judge:  This case is before the Court on petitioners' motion to

restrain the assessment or collection of tax and respondent's motion to dismiss the

portion of this case relating to penalties under section 6662.[1]

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code as amended and in effect at all relevant times, and all Rule

(continued...)

[*2]   On November 6, 2015, respondent issued affected items notices of deficiency to petitioners following partnership-level proceedings under the unified audit and litigation partnership procedures (TEFRA). The deficiency notices determined income tax deficiencies for 1999, 2000, and 2002 of $1,746,012, $343,002, and $2,184, respectively; an accuracy-related penalty under section 6662(a) for 1999 of $7,884.20; and gross valuation misstatement penalties under section 6662(h) for 1999, 2000, and 2002 of $682,636.40, $137,200.80, and $873.60, respectively.

Both parties agree that we have jurisdiction to redetermine the income tax deficiencies in this case.  Respondent concedes that because we have jurisdiction over the tax deficiencies, petitioners' motion to restrain the collection of tax is appropriate.  However, respondent believes that we lack jurisdiction to consider the penalties at issue and therefore we must dismiss as to the penalties and have no authority to restrain collection of the same.

Petitioners argue partner-level determinations must be made regarding the income tax deficiencies and penalties at issue; thus, they argue, we have jurisdiction over the entirety of this case and respondent cannot assess or collect

[1](...continued)
references are to the Tax Court Rules of Practice and Procedure.

[*3] any tax deficiencies or penalties. Respondent agrees that partner-level determinations must be made regarding the income tax deficiencies, but he disputes our jurisdiction over the penalties. He believes liability as to the penalties was established at the partner level during the TEFRA proceedings and therefore petitioners have no recourse with this Court to contest them.

The issue for consideration is whether the adjustments in the notices of deficiency attributable to the TEFRA decision require partner-level determinations and thus give us jurisdiction over the case. We hold that they do require partner-level determinations as related to the tax deficiencies, but not the penalties, and that we have jurisdiction only over the tax deficiencies at issue, but not over the penalties. Accordingly, we have jurisdiction to enjoin the assessment and collection of tax and will grant petitioners' motion as it relates to the tax deficiencies. We will also grant respondent's motion to dismiss as to the penalties.

**[\*4]**                                    Background

Petitioners resided in Florida when the petition was timely filed.[2]  On

February 8, 2016, respondent issued two Forms 3552, Notice of Tax Due on

Federal Tax Return, for 1999 and 2000.  On May 16, 2016, respondent issued two

Notices CP503, Second Reminder of Unpaid Taxes, for 1999 and 2000.

I.    Arbitrage Trading, LLC

The deficiencies in this case arise from petitioners' involvement with

Arbitrage Trading, LLC (Arbitrage), an entity subject to TEFRA.  Petitioners, as

owners of the Robert and Jayne Gunther 1999 Revocable Trust, acquired a pair of

currency options from AIG International, Inc., which they purportedly contributed,

along with $45,000 in cash, to Arbitrage in exchange for a purported partnership

interest therein.  Petitioners subsequently withdrew their interest in Arbitrage in

exchange for a liquidating distribution of Xerox stock.

---

[2]The Court received the petition on February 5, 2016, one day after it was
due.  However, we may treat the petition as being filed on the date of mailing.  See
sec. 7502(a); Rule 13(c).  Although the UPS packaging in which the petition was
mailed contained no postmark, we are permitted to presume the mailing date by
tracing back to the date a package of that kind would normally have been sent.
See sec. 7502(f)(1); sec. 301.7502-1(c)(3), Proced. & Admin. Regs.; Notice 2015-
38, 2015-21 I.R.B. 984 (designating UPS Next Day Air as a qualified private
delivery service) (superseded by Notice 2016-30, 2016-18 I.R.B. 676, which
became effective April 11, 2016, after the petition was filed in this case).  Thus,
because the package was mailed UPS Next Day Air, we may presume it was
mailed on February 4, 2016, and treat it as filed as of that date.

[*5]  Partnership proceedings in the Court of Federal Claims for Arbitrage's 1999 tax year sustained respondent's determination that Arbitrage was a sham and properly disregarded for Federal tax purposes.  <u>Arbitrage Trading, LLC, by and through Robert C. Gunther as a trustee for the Robert and Jayne Gunther 1999 Revocable Trust v. United States</u>, Docket No. 06-202T (Oct. 3, 2014).  As a result, respondent disregarded petitioners' investment in Arbitrage for 1999.

II.   Income Tax Deficiencies

A.     1999 Tax Deficiency

Respondent determined a deficiency for petitioners' 1999 tax year as a result of:  (1) the disallowance of a reported loss from the sale of the Xerox stock purportedly distributed by Arbitrage; (2) the inclusion of a constructive dividend for the payment of legal, accounting, consulting, and advisory fees related to Arbitrage; and (3) computational adjustments to itemized deductions and certain exemptions resulting from (1) and (2).

B.     2000 and 2002 Tax Deficiencies

Respondent determined deficiencies for petitioners' 2000 and 2002 tax years as a result of:  (1) the disallowance of a short-term capital loss carryforward representing a portion of the loss claimed on petitioners' 1999 tax return from the sale of the Xerox stock purportedly distributed by Arbitrage; (2) an increase in

**[*6]** taxable income from the disallowance of net operating loss carryforward from petitioners' 1999 tax year resulting from transactions related to Arbitrage; and (3) computational adjustments to itemized deductions resulting from (1) and (2).

The penalties for 1999, 2000, and 2002 represent accuracy-related penalties under section 6662(a) and (h), the applicability of which was determined at the partnership level.

## Discussion

The Tax Court is a court of limited jurisdiction, and we may exercise that jurisdiction only to the extent authorized by Congress. Naftel v. Commissioner, 85 T.C. 527, 529 (1985). The Court's jurisdiction to redetermine a deficiency depends upon the issuance of a valid notice of deficiency and a timely filed petition. Id. at 530; see secs. 6212 and 6213(a); Rule 13(a), (c). Section 6213(a) generally restrains the assessment of deficiencies and the collection of the same unless a notice of deficiency is issued by the Commissioner. The prohibition on assessment and collection extends during the time a petition may be filed in this Court, during the pendency of any proceeding actually brought, and until the decision of the Court becomes final. Sec. 6213(a). The Court has jurisdiction to enjoin the assessment and the collection of a deficiency that the Court has

**[*7]** jurisdiction to redetermine. Id.; see Meyer v. Commissioner, 97 T.C. 555, 560-561 (1991).

We analyze the extent of our jurisdiction to enjoin the assessment or the collection of tax. We will examine our jurisdiction over the tax deficiencies first and then turn to our jurisdiction over the penalties.

## I.        Jurisdiction Over Tax Deficiencies

Neither party disputes our jurisdiction over the tax deficiencies in this case. However, because our jurisdiction "flows directly from Congress" and cannot be waived, we must determine it for ourselves. David Dung Le, M.D., Inc. v. Commissioner, 114 T.C. 268, 269 (2000) ("The failure to question our jurisdiction is not a waiver of the right to do so, for if we lack jurisdiction over an issue, we do not, and never did, have the power to decide it."), aff'd, 22 F. App'x 837 (9th Cir. 2001). Partnerships do not pay tax; rather, items of partnership income, loss, deduction, and credit are reflected on the partners' individual tax returns. See secs. 701 and 702. The TEFRA audit and litigation procedures under sections 6221 through 6234 apply to partnership items and allow for adjustments to partnership items in a TEFRA partnership-level proceeding. Such adjustments may result in adjustments to the tax liabilities of individual partners; however,

**[*8]** once the partnership items become final, the Commissioner must generally initiate further action at the partner level to adjust an individual partner's tax liability.

Computational adjustments are changes in the tax liability of a partner to properly reflect the treatment of a partnership item whether those changes can be directly assessed without partner-level determinations or require partner-level determinations and proceedings. See sec. 6231(a)(6); sec. 301.6231(a)(6)-1, Proced. & Admin. Regs. The Commissioner may make computational adjustments to reflect affected items--i.e., items affected by a partnership item determined at the partnership level. Sec. 6231(a)(5). There are two kinds of computational adjustments: ones to affected items that require partner-level determinations and ones to affected items that do not. If an affected item requires partner-level determinations, it is subject to the normal deficiency procedures under sections 6211 through 6216; and the Commissioner must issue a notice of deficiency to the partner before assessing any tax. Sec. 6230(a); sec. 301.6231(a)(6)-1(a)(3), Proced. & Admin. Regs. However, if an affected item requires no partner-level determinations, the normal deficiency procedures do not apply; and the Commissioner may immediately assess the resulting tax deficiency without issuing a notice of deficiency. Sec. 6230(a)(1) and (2)(A)(i); sec. 301.6231(a)(6)-1(a)(2),

**[*9]** Proced. & Admin. Regs. Where additional partner-level determinations are required and the Commissioner must issue a notice of deficiency, the taxpayer has a prepayment forum to challenge the Commissioner's determinations. Sec. 6230(a)(2)(A). However, if no partner-level determinations are required the taxpayer has no prepayment forum and must file a refund claim. Sec. 6230(a)(1), (c)(4).

Respondent argues that we have jurisdiction over the tax deficiencies in this case because factual determinations must be made at the partner level; thus, the Commissioner was required to issue a notice of deficiency and the notices in this case are valid. Petitioners do not dispute this portion of respondent's argument. We agree with both parties. Respondent's determinations are based on petitioners' sale of stock received in liquidation of their purported interest in Arbitrage. Generally, when a partnership interest is liquidated, a partner's basis in property (other than money) received from the partnership in a liquidating distribution is equal to the partner's outside basis in the partnership. Sec. 732(b). However, where the partnership is a sham and disregarded for Federal tax purposes, the partner is treated as holding the partnership's assets directly, and his adjusted basis in the assets is determined under section 1012(a). Keeter v. Commissioner, T.C.

[*10] Memo. 2018-191, at *13; see also sec. 1012(a) (basis of property is generally its cost).

The partners of a sham partnership do not have carryover bases under section 732(b) in assets purportedly received in liquidation of their interests in the partnership. Nonetheless, factual determinations regarding the partners' cost bases in the assets under section 1012(a) are required. For example, partner-level determinations must be made to determine petitioners' holding period for the stock, the character of any gain or loss, and whether the stock they sold in 1999 was the stock purportedly distributed by Arbitrage. See Napoliello v. Commissioner, 655 F.3d 1060, 1064 (9th Cir. 2011), aff'g T.C. Memo. 2009-104; Domulewicz v. Commissioner, 129 T.C. 11, 20 (2007), aff'd in relevant part, remanded in part sub nom. Desmet v. Commissioner, 581 F.3d 297 (6th Cir. 2009); Keeter v. Commissioner, at *14.

The adjustments to petitioners' tax liabilities require partner-level determinations. Consequently, the normal deficiency procedures apply to those determinations and we have jurisdiction to redetermine the tax deficiencies. We now must examine our jurisdiction over the penalties.

**[*11]** II.     Jurisdiction Over Penalties

Respondent asserts that we lack jurisdiction over the penalties.  He argues that the liability for the penalties was determined in the prior partnership-level TEFRA proceeding; therefore, he continues, because liability for penalties is directly assessable at the partnership level, no partner-level determinations are required, we must dismiss the portion of this case relating to penalties for lack of jurisdiction, and we have no authority to enjoin the assessment or collection of the penalties.  Petitioners respond that under the Supreme Court's holding in United States v. Woods, 571 U.S. 31 (2013), penalties may be determined only provisionally at the partnership level and additional determinations are still required at the partner level.  We agree with respondent.

As we have explained, affected items are items that relate to a partnership item.  Sec. 6231(a)(5).  Section 6230(a)(1) provides that normal deficiency procedures generally do not apply to the assessment or collection of computational adjustments.  However, there is an exception where a computational adjustment is attributable to an affected item that requires partner-level determinations.  Sec. 6230(a)(2)(A)(i).  That exception applies to the tax liabilities in this case, which we have said require partner-level determinations.  However, the plain language of that exception renders it inapplicable to "penalties, additions to tax, and additional

**[*12]** amounts that relate to adjustments to partnership items." Id.; see also sec. 301.6231(a)(6)-1(a)(3), Proced. & Admin. Regs. Respondent urges that because there is no exception for penalties, the general rule applies and deficiency procedures are inapplicable. In response, petitioners point to the Supreme Court's decision in Woods as holding that penalty determinations at the partnership level are only provisional. We do not believe Woods stands for the proposition that petitioners suggest.

In Woods the Supreme Court addressed a District Court's jurisdiction in partnership-level proceedings under TEFRA and the requirement for subsequent partner-level determinations. As the Supreme Court explained:

> Once the adjustments to partnership items have become final, the IRS may undertake further proceedings at the partner level to make any resulting "computational adjustments" in the tax liability of the individual partners. Most computational adjustments may be directly assessed against the partners, bypassing deficiency proceedings and permitting the partners to challenge the assessments only in post-payment refund actions. Deficiency proceedings are still required, however, for certain computational adjustments * * *

Woods, 571 U.S. at 39 (citations omitted).

The Supreme Court went on to explain that courts in partnership-level proceedings have jurisdiction to determine the applicability of any penalty that "relates to" a partnership item. Id. (quoting section 6226(f)). Thus, the question

**[\*13]** the Supreme Court was deciding in <u>Woods</u> was "whether the valuation-misstatement penalty 'relates to' the determination that the partnerships * * * were shams." <u>Id.</u> In answering this question in the affirmative the Supreme Court noted that "[u]nder TEFRA's two-stage structure, penalties for tax underpayment must be <u>imposed</u> at the partner level". <u>Id.</u> at 40. As the Supreme Court explained, this renders the penalty determination at the partnership-level proceedings "inherently provisional", because it must be imposed at a later partner-level proceeding. <u>Id.</u> at 41. However, the Supreme Court does not make the same leap that petitioners do in this case--i.e., that the later imposition of the provisional penalties must be done under normal deficiency proceedings. The Supreme Court only notes that "[e]ach partner remains free to raise, in subsequent, partner-level proceedings, any reasons why the penalty may not be imposed on him specifically." <u>Id.</u> at 42. Under section 6230 the appropriate venue for partners to raise subsequent challenges to the imposition of penalties is in a postpayment refund action. Sec. 6230(c)(4), (c)(1)(C); sec. 301.6221-1(c), Proced. & Admin. Regs.; <u>see also</u> <u>Woods</u>, 571 U.S. at 39 ("[M]ost computational adjustments may be directly assessed against the partners, bypassing deficiency proceedings and permitting the partners to challenge the assessments only in post-payment refund

[*14] actions.").[3]  Thus, we find that we have no jurisdiction in this pre-payment forum to consider the penalties determined at the partnership level.  See also Domulewicz v. Commissioner, 129 T.C. at 22-23.  Petitioners must raise any defenses to the penalties in a refund action.[4]  As we have no jurisdiction to

---

[3]The Supreme Court appears to acknowledge that its holding in United States v. Woods, 571 U.S. 31 (2013), would allow the direct assessment of penalties without deficiency proceedings.  In a footnote, the Supreme Court dismisses criticism from amici that its holding would allow a direct assessment of the 40% penalty, but require deficiency proceedings to assess the tax underpayment.  Id. at 42 n.2.  However, the Supreme Court does not scoff at the assumption that its holding would foreclose the direct assessment of penalties; rather, it suggests that there is no "readily apparent" reason deficiency proceedings would be required to assess the tax underpayment if it was dependent only on adjusting outside basis in a sham partnership.  Id.

[4]Petitioners suggest that denying them a prepayment forum to dispute the penalties in this case would violate the Fifth Amendment's due process requirement.  We do not agree.  Congress has chosen to provide petitioners and other similarly situated taxpayers with only a postpayment refund forum.  Such is its prerogative and does not violate the Constitutional requirements of due process.  See Phillips v. Commissioner, 283 U.S. 589, 595-597 (1931); Johnston v. Commissioner, 429 F.2d 804, 806 (6th Cir. 1970), aff'g 52 T.C. 792 (1969); Fendler v. Commissioner, 441 F.2d 1101, 1103 (9th Cir. 1971).
    Additionally, petitioners argue that Mrs. Gunther's innocent spouse claim under sec. 6015 requires granting a prepayment opportunity to challenge the penalties in this case.  Apart from a vague assertion in their petition that "as a protective matter, Jayne is entitled to Innocent Spouse Relief under Section 6015", we find no claim for innocent spouse relief by Mrs. Gunther.  Because we find that this conclusory statement does not satisfy our pleading requirements, no innocent spouse claim has been pleaded and we will not consider this argument.  See Rule 321(b).  Our decision does not consider the merits of any potential innocent spouse claim Mrs. Gunther may have.

[*15] consider the penalties at issue, we have no authority to enjoin their collection or assessment. Accordingly, petitioners' motion as it relates to the penalties will be denied and respondent's motion to dismiss as to the penalties will be granted. We have jurisdiction over the tax liabilities at issue; therefore, petitioners' motion to restrain the collection or assessment of the tax liabilities will be granted.

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

An order will be issued granting petitioners' motion in part and denying it in part and granting respondent's motion.