T.C. Memo. 2020-16

UNITED STATES TAX COURT

LORI J. MANROE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

ROBERT D. MANROE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 21590-17, 21591-17.          Filed January 22, 2020.

<u>Ernest Scribner Ryder</u>, for petitioners.

<u>Thomas Lee Fenner</u> and <u>Mark J. Miller</u>, for respondent.

[*2]                 MEMORANDUM OPINION

URDA, Judge: These consolidated cases are before the Court on petitioners' motion to restrain collection and respondent's motion to dismiss the portions of these cases relating to penalties under section 6662.[1]

On July 12, 2017, respondent issued two affected items notices of deficiency both to petitioner Robert Manroe and to petitioner Lori Manroe (together, Manroes) following partnership-level proceedings under the unified audit and litigation partnership procedures (TEFRA). The deficiency notices determined income tax deficiencies of $1,630,592 for 2001 and $96,943 for 2002 and gross valuation misstatement penalties under section 6662(h) of $652,266 for 2001 and $38,777 for 2002. The parties agree that we have jurisdiction to redetermine the income tax deficiencies, and respondent concedes that petitioners' motion to restrain collection is appropriate with respect to those deficiencies.

The principal dispute remaining is whether we have jurisdiction to redetermine the penalties at issue, a necessary prerequisite for us to exercise our authority to restrain collection of those penalties. Consistent with our recent

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] opinion in Gunther v. Commissioner, T.C. Memo. 2019-6, aff'd, ___ F. App'x ___, 2020 WL 64749 (11th Cir. Jan. 7, 2020), and the decision of the Court of Appeals for the Eleventh Circuit in Highpoint Tower Tech. Inc. v. Commissioner, 931 F.3d 1050 (11th Cir. 2019), we conclude that we lack jurisdiction in this regard. We therefore will grant respondent's motion in full, and grant petitioners' motion in part and deny it in part.

Background

The Manroes lived in California when they timely filed their petitions. The following facts are not in dispute and are derived from the pleadings, the parties' motions, and supporting exhibits attached thereto. The facts are stated solely for purposes of deciding the motions before us.

I.   BLAK Investments

These cases stem from the Manroes' participation in a Son-of-BOSS tax shelter transaction involving BLAK Investments (BLAK), an entity subject to TEFRA. BLAK was formed in December 2001, with the Manroes and two trusts created for the benefit of their children serving as partners. The Manroes each contributed essentially offsetting positions (proceeds of short sales of U.S. Treasury notes on one side of the scale and short positions on Treasury notes on the other) to BLAK. Before December's end BLAK redeemed the Manroes'

[*4] respective partnership interests by means of a cash payment to Ms. Manroe and a payment of both cash and 82,645 Swiss francs (francs) to Mr. Manroe. The Manroes subsequently exchanged 82,645 francs for U.S. dollars.

BLAK took the position in its 2001 tax reporting that the contributed short positions were not liabilities within the meaning of section 752. The Manroes took the related position on their joint 2001 Form 1040, U.S. Individual Income Tax Return, that their bases in their partnership interests in BLAK were not decreased by the short positions. They reported that the transaction resulted in an ordinary loss of $2,539,769 for Mr. Manroe and a short-term capital loss of $2,982,840 for Ms. Manroe. They further claimed a $458,190 carryover loss deduction on their joint 2002 Federal income tax return.

On October 13, 2006, the Internal Revenue Service (IRS) issued a notice of final partnership administrative adjustment (FPAA) to BLAK, in which it determined that BLAK was a sham lacking in economic substance and made adjustments consistent with that position. BLAK's tax matters partner petitioned this Court for readjustment, raising assorted challenges to the FPAA that we subsequently rejected.

The parties thereafter stipulated that BLAK was a sham, lacked economic substance, and was formed to claim deductions of artificial losses solely for tax

[*5] purposes.  See BLAK Invs. v. Commissioner, T.C. Dkt. No. 1283-07 (May 25, 2011) (stipulation of settled issues).  This Court entered a decision sustaining the adjustments set forth in the FPAA.  See id. (June 2, 2016) (stipulated decision).  The decision specified that "the 40 percent accuracy-related penalty for gross valuation misstatement under * * * [section 6662(h)] applies to any underpayment of tax resulting from the adjustments for the taxable year ended December 31, 2001".  Id. at 1.  The decision further specified that, if such a penalty did not apply, the 20% accuracy-related penalty for an underpayment due to either negligence or a substantial understatement of income tax would apply.  Id. at 2.

## II.    Income Tax Deficiencies

On July 12, 2017, the IRS issued to each of the Manroes notices of deficiency for their 2001 and 2002 tax years, determining deficiencies and accuracy-related penalties "in accordance with the examination results for" BLAK.  On October 16, 2017, the Manroes both timely filed petitions for redetermination in this Court.  In addition to challenging the determinations in the notices, the Manroes asserted in their petitions that the IRS had made premature assessments (on August 7, 2017) of the deficiencies determined in the notices.

The Manroes then filed in their respective cases a motion to restrain the IRS from collection of the premature assessments and for the refund of amounts

**[\*6]** previously collected. Although respondent agrees to the relief requested in the Manroes' motions as it relates to the collection of the income tax deficiency amounts, he contends that we may not grant such relief as to penalties because we lack jurisdiction over them in this partner-level proceeding.

## Discussion

I.      Legal Standards

        A.      Postnotice Restraint on Assessment and Collection

This Court is a court of limited jurisdiction, and we may exercise that jurisdiction only to the extent authorized by Congress. Naftel v. Commissioner, 85 T.C. 527, 529 (1985). Our jurisdiction to redetermine a deficiency depends upon the issuance of a valid notice of deficiency and a timely filed petition. Id. at 530; see secs. 6212 and 6213(a); Rule 13(a), (c).

Section 6213(a) generally restrains the assessment of deficiencies and the collection of the same unless a notice of deficiency is issued by the Commissioner. The prohibition on assessment and collection extends during the time a petition may be filed in this Court, during the pendency of any proceeding actually brought, and until the decision of the Court becomes final. Id. We have jurisdiction to enjoin the assessment and the collection of a deficiency that the

**[*7]** Court has jurisdiction to redetermine.  Id.; see, e.g., Powell v. Commissioner, 96 T.C. 707, 711 (1991).

> B.      TEFRA Overview

 "A partnership does not pay [F]ederal income taxes; instead, its taxable income and losses pass through to the partners."  United States v. Woods, 571 U.S. 31, 38 (2013); see secs. 701 and 702.  Congress enacted the TEFRA procedures under sections 6221 through 6234 so that partnership-related tax matters could be adjudicated in a single, unified proceeding, rather than in multiple deficiency proceedings brought by partners of the same partnership.  Woods, 571 U.S. at 38.

We start with the definitions of a few significant terms in the TEFRA context:  "partnership item", "nonpartnership item", "affected item", and "computational adjustment".  Generally, the term "partnership item" refers to "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level."  Sec. 6231(a)(3).  A "nonpartnership item" is an "item which is (or is treated as) not a partnership item."  Id. para. (4).  An "affected item" is "any item to the extent such item is

**[\*8]** affected by a partnership item." Id. para. (5). Finally, the term "computational adjustment" means "the change in the tax liability of a partner which properly reflects the treatment under this subchapter of a partnership item." Id. para. (6).

TEFRA employs a two-step process for addressing partnership-related matters. The IRS first initiates proceedings at the partnership level to adjust "partnership items". See secs. 6221, 6231(a)(3); see also Woods, 571 U.S. at 39; Gunther v. Commissioner, at \*7-\*8. "Once the adjustments to partnership items have become final, the IRS may undertake further proceedings at the partner level to make any resulting 'computational adjustments' in the tax liability of the individual partners." Woods, 571 U.S. at 39; see sec. 6231(a)(6); see also Gunther v. Commissioner, at \*7-\*8.

Computational adjustments come in two flavors: ones to affected items that require partner-level determinations and ones to affected items that do not. Gunther v. Commissioner, at \*7-\*8. If an affected item requires partner-level determinations, it is subject to the normal deficiency procedures under sections 6211 through 6216, including the issuance of a notice of deficiency to the partner before the assessment of any tax and the chance to seek prepayment review in this Court. See Gunther v. Commissioner, at \*8-\*9.

**[*9]** If an affected item does not require partner-level determinations, the normal deficiency procedures do not apply. See sec. 6230(a)(1) and (2)(A)(i); sec. 301.6231(a)(6)-1(a)(2), Proced. & Admin. Regs. In that instance the Commissioner may immediately assess the resulting tax deficiency without issuing a notice of deficiency. See Woods, 571 U.S. at 39. The partner against whom such an assessment is made may thereafter challenge it through a postpayment refund action or "to some extent" in a collection due process (CDP) proceeding. See id.; see also Davison v. Commissioner, T.C. Memo. 2019-26, at *16, appeal filed (5th Cir. May 30, 2019).

II.     Jurisdiction in These Cases

A.      Income Tax Deficiencies

The parties agree that we have jurisdiction over the income tax deficiencies in these cases, as required to entertain the Manroes' motion to restrain collection relating to those deficiencies. While required to assure ourselves of our jurisdiction independent of the parties' views, see David Dung Le, M.D., Inc. v. Commissioner, 114 T.C. 268, 269 (2000), aff'd, 22 F. App'x 837 (9th Cir. 2001), we agree with their conclusion.

The adjustments to the Manroes' tax liabilities require factual determinations at the partner level, and the normal deficiency procedures thus

**[\*10]** apply.  See <u>Gunther v. Commissioner</u>, at \*9-\*10.  As BLAK was a sham and disregarded for Federal tax purposes, the Manroes are treated as holding BLAK's assets directly, and their adjusted bases in the assets are determined under section 1012(a).  See <u>Keeter v. Commissioner</u>, T.C. Memo. 2018-191, at \*13; <u>see also</u> sec. 1012(a) (basis of property is generally its cost).  To do so, we need additional facts regarding the Manroes' sale of the francs, including (i) whether the francs the Manroes sold in 2001 are the same francs that Mr. Manroe received from BLAK, (ii) the Manroes' holding period for the francs, (iii) the character of any gain or loss, and (iv) whether the Manroes had any basis in the francs that was not attributable to their claimed basis in BLAK.  See, e.g., <u>Napoliello v. Commissioner</u>, 655 F.3d 1060, 1064 (9th Cir. 2011), <u>aff'g</u> T.C. Memo. 2009-104; <u>Domulewicz v. Commissioner</u>, 129 T.C. 11, 20 (2007), <u>aff'd in relevant part, remanded in part sub nom.</u> <u>Desmet v. Commissioner</u>, 581 F.3d 297 (6th Cir. 2009).

In summary, we have jurisdiction over the Manroes' income tax deficiencies because partner-level determinations (subject to the normal deficiency procedures) are needed.[2]  We accordingly will grant the Manroes' motion to restrain collection

---

[2]The Manroes argue that partner-level determinations are also required to determine their outside bases in their sham partnership.  But "it is not readily

(continued...)

**[\*11]** and refund amounts previously collected as it relates to their income tax deficiencies.

### B.    Penalties

We do not have jurisdiction, however, over the penalties that the Manroes seek to challenge or their derivative request to restrain collection with respect to the penalties.  See Highpoint Tower Tech. Inc. v. Commissioner, 931 F.3d at 1057; Gunther v. Commissioner, at *11-*15; see also sec. 6230(a)(1).

#### 1.    Section 6230(a)(1)

Our analysis begins with section 6230(a)(1):  "Except as provided in paragraph (2) or (3), subchapter B of this chapter shall not apply to the assessment or collection of any computational adjustment."  Section 6230(a)(1) establishes a default rule that "normal deficiency procedures generally do not apply to the assessment or collection of computational adjustments."  Gunther v. Commissioner, at *11; see also Highpoint Tower Tech. Inc. v. Commissioner, 931 F.3d at 1057.  Our jurisdiction over the penalties at issue, therefore, relies on whether the penalties are computational adjustments and whether they fall within

---

[2](...continued)
apparent why additional partner-level determinations would be required before adjusting outside basis in a sham partnership."  United States v. Woods, 571 U.S. 31, 42 n.2 (2013).

**[\*12]** the exceptions to the default rule set forth in section 6230(a)(2) or (3). <u>See</u> sec. 6230(a)(1); <u>see also</u> <u>Highpoint Tower Tech. Inc. v. Commissioner</u>, 931 F.3d at 1057. Like the Court of Appeals for the Eleventh Circuit we conclude that the penalties at issue constitute computational adjustments and that neither exception applies. <u>See</u> <u>Highpoint Tower Tech. Inc. v. Commissioner</u>, 931 F.3d at 1058-1061.

Turning to the first point, "if a change in tax liability of a partner reflects treatment of a partnership item (an item required to be taken into account for the partnership's taxable year and more appropriately determined at the partnership level), then deficiency proceedings will not apply to the assessment of that adjustment unless otherwise provided for in § 6230(a)(2) or (a)(3)." <u>Highpoint Tower Tech. Inc. v. Commissioner</u>, 931 F.3d at 1057-1058. Section 301.6231(a)(3)-1(b), Proced. & Admin. Regs., includes within its definition of partnership item "the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc." The underlying determination that a partnership is a sham plainly falls within this definition. <u>Accord</u> <u>Woods</u>, 571 U.S. at 39-44; <u>see</u> <u>Highpoint Tower Tech. Inc. v. Commissioner</u>, 931 F.3d at 1058; <u>see also</u> <u>RJT Invs. X v. Commissioner</u>, 491 F.3d 732, 737-738 (8th Cir. 2007). The gross

**[\*13]** valuation misstatement penalties here thus relate to an adjustment to a partnership item and are not subject to deficiency jurisdiction absent an exception to the default rule. See Highpoint Tower Tech. Inc. v. Commissioner, 931 F.3d at 1058.

    2.    Section 6230(a)(2)(A)(i)

The Manroes argue that they satisfy section 6230(a)(2)(A)(i), one such exception. Both this Court and the Court of Appeals for the Eleventh Circuit have rejected this argument in similar cases. See Highpoint Tower Tech. Inc. v. Commissioner, 931 F.3d at 1059; Gunther v. Commissioner, at \*11-\*12.

Section 6230(a)(2)(A)(i) provides that deficiency procedures "shall apply to any deficiency attributable to \* \* \* affected items which require partner-level determinations (other than penalties, additions to tax, and additional amounts that relate to adjustments to partnership items)". The plain text of that exception renders it inapplicable to penalties that relate to adjustments to partnership items, as here. See Highpoint Tower Tech. Inc. v. Commissioner, 931 F.3d at 1061; Gunther v. Commissioner, at \*11-\*12; see also sec. 301.6231(a)(6)-1(a)(3), Proced. & Admin. Regs.

The Manroes, however, assert that the penalties here relate to affected items (their outside bases) and, consequently, are distinct from penalties that relate to

**[\*14]** partnership items.  As the Court of Appeals recently explained, the Supreme

Court's decision in <u>Woods</u> runs counter to this argument.  See <u>Highpoint Tower</u>

<u>Tech. Inc. v. Commissioner</u>, 931 F.3d at 1061-1064.

In <u>Woods</u>, the Supreme Court considered the phrase "any penalty * * *

which relates to an adjustment to a partnership item" (in section 6226(f)), which is

nearly identical to the pertinent text of section 6230(a)(2)(A)(i).  The taxpayer in

<u>Woods</u> raised an argument analogous to the one that the Manroes make here; i.e.,

that "because outside basis is not a partnership item, but an affected item, a

penalty that would rest on a misstatement of outside basis cannot be considered at

the partnership level." <u>Woods</u>, 571 U.S. at 40.  The Supreme Court expressly

rejected that argument, holding that "TEFRA gives courts in partnership-level

proceedings jurisdiction to determine the applicability of any penalty that could

result from an adjustment to a partnership item, even if imposing the penalty

would also require determining affected or non-partnership items such as outside

basis." <u>Id.</u> at 41.[3]

---

[3]In <u>Woods</u>, 571 U.S. at 41, the Supreme Court observed that the penalty determination at the partnership level is "inherently provisional" in that it is "always contingent upon determinations that the court in a partnership-level proceeding does not have jurisdiction to make."  The Manroes argue that this observation supports our jurisdiction over penalties in this partner-level proceeding.  As we have previously explained, this argument skips an analytical

(continued...)

**[\*15]** As the Court of Appeals for the Eleventh Circuit has explained, the Supreme Court's decision in <u>Woods</u> refutes the notion that penalties that relate to adjustments to partnership items and penalties relating to affected items that require partner-level determinations are mutually exclusive. <u>Highpoint Tower Tech. Inc. v. Commissioner</u>, 931 F.3d at 1064. To the contrary, "[t]he valuation-misstatement penalty at issue can be an affected item requiring partner-level determinations while also relating to adjustments to partnership items." <u>Id.</u> As the valuation-misstatement penalty is related to an adjustment to a partnership item, it "fall[s] within § 6230(a)(2)(A)(i)'s exclusion of such items from deficiency jurisdiction." <u>Id.</u>[4]

---

[3](...continued) step: The Supreme Court does not suggest "that the later imposition of the provisional penalties must be done under normal deficiency proceedings." <u>Gunther v. Commissioner</u>, T.C. Memo. 2019-6, at \*13, <u>aff'd</u>, ___ F. App'x ___, 2020 WL 64749 (11th Cir. Jan. 7, 2020). "Under section 6230 the appropriate venue for partners to raise subsequent challenges to the imposition of penalties is in a postpayment refund action." <u>Id.</u>; <u>see also</u> <u>Woods</u>, 571 U.S. at 39; <u>Highpoint Tower Tech. Inc. v. Commissioner</u>, 931 F.3d 1050, 1063 n.10 (11th Cir. 2019) (identifying refund proceedings and CDP proceedings as partner-level proceedings where penalties could be challenged).

[4]We pause to address two additional points. First, the Manroes argue that the stipulation in the partnership-level proceeding that BLAK was a sham resulted in the "agreed creation of a new TEFRA partnership". The Manroes claim that this new TEFRA partnership entitled them to a substantially similar tax result to the one they hoped to achieve through their Son-of-BOSS transaction. This

(continued...)

**[*16]** III.    Conclusion

We conclude that, although we have jurisdiction to redetermine the income tax deficiencies, we have no jurisdiction in this pre-payment forum to consider the penalties determined here at the partnership level.  As we have no jurisdiction to consider the penalties at issue, we have no authority to enjoin the collection or order the refund of any amounts previously collected.  Accordingly, the Manroes' motion as it relates to the penalties will be denied and respondent's motion to dismiss as to the penalties will be granted.

To reflect the foregoing,

An appropriate order will be issued.

---

[4](...continued)
argument is patently ridiculous.  Second, Ms. Manroe asserts that she is entitled to innocent spouse relief.  Her vague statement in her petition that "it would appear that * * * [Ms. Manroe] would be eligible for innocent spouse relief, to the extent the Court finds any additional tax liability" does not satisfy our pleading requirements under Rule 321(b).  Therefore, we do not consider the merits of any potential innocent spouse claim Ms. Manroe may have.  See Gunther v. Commissioner, at *14 n.4.